UNITED STATES DISTRICT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER PANATTONI, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> VILLAGE OF FRANKFORT, ) <br> ) <br> Defendant. ) | Case No. 17-cv-6710 |

## COMPLAINT

1. Plaintiff Jennifer Panattoni ("Officer Panattoni") brings this action against the Village of Frankfort (the "Village" or "Defendant") for violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Illinois Human Rights Act ("IHRA"), 775 ILCS 5/1-101 *et seq.* In support of her Complaint, Officer Panattoni alleges and states the following:

## INTRODUCTION

2. Jennifer Panattoni, one of the only female officers in the Frankfort Police Department ("FPD"), has served her community with distinction for more than 14 years. But when she became pregnant in late 2015 and sought to keep working, Defendant responded with persistent discrimination. It refused to provide her a uniform that would fit her changing body. It refused to provide her the properly-sized protective gear that would keep her safe while she continued patrolling the streets. It refused to allow her to carry some of her equipment in her pockets and vest so as to lessen the strain on her abdomen caused by her 25-pound duty belt. Despite allowing non-pregnant officers to take personal breaks while on duty without having to use benefit time, it refused to allow her to do the same. And when Officer Panattoni asked to

modify her job duties as her pregnancy progressed, Defendant refused, claiming that it would only grant modified-duty assignments to officers with on-the-job injuries. In retaliation for Officer Panattoni asserting her rights under federal and Illinois law, Defendant singled her out for disparate treatment, ranging from threats of unwarranted discipline to denials of the equipment she needed to do her job.

3. Ultimately, Defendant forced Officer Panattoni off the job and onto leave simply because she was pregnant.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331, and should exercise its supplemental jurisdiction over Officer Panattoni's state law claims pursuant to 28 U.S.C. § 1367.

5. Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

6. Venue is proper in this Court under 28 U.S.C. § 1391 because the parties reside in this District, and the unlawful practices complained of occurred within this District.

## PARTIES

7. Plaintiff Jennifer Panattoni is a resident of Manhattan, Illinois. She is a nonexempt employee of Defendant within the meaning of 42 U.S.C. § 2000e(f) and 775 ILCS 5/2-101(A). Since June 2003 and continuing through the present, Officer Panattoni has been employed as a full-time police officer in FPD, which is an organizational division of the Village.

8. Defendant Village of Frankfort is an incorporated village located in the southern suburbs of Chicago. The Village is a "person" within the meaning of 42 U.S.C. § 2000e(a), as well as an "employer" within the meaning of 42 U.S.C. § 2000e(b) and 775 ILCS 5/2-101(B).

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

9.  On July 5, 2016, Officer Panattoni filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that Defendant engaged in sex (pregnancy) and disability discrimination and retaliation. This charge was cross-filed with the Illinois Department of Human Rights ("IDHR"). On November 21, 2016, Officer Panattoni filed an amended charge, supplementing her allegations as to Defendant's unlawful conduct. On June 20, 2017, the EEOC issued a Notice of Right to Sue, attached as Exhibit 1. Officer Panattoni has forwarded the EEOC's Notice of Right to Sue to IDHR and requested that IDHR issue its finding, which request is pending.

**FACTS GIVING RISE TO THIS ACTION**

10. Defendant hired Officer Panattoni on or about June 26, 2003 as a full-time police officer. In 2010, FPD promoted her to Senior Patrol Officer.

11. Officer Panattoni has earned numerous awards and commendations in the 14 years that she has served the Village as a police officer.

12. As a Senior Patrol Officer, Officer Panattoni's duties include patrolling the Frankfort area in a marked squad car, engaging in community-building activities with residents, issuing traffic citations and warnings, responding to calls for service, investigating complaints of criminal and non-criminal activity, conducting crime prevention activities such as business inspections, providing traffic direction and control, and making arrests when necessary.

13. FPD requires officers working patrol shifts to wear a uniform, body armor, and a duty belt. Body armor is typically worn inside a fabric vest with external pockets (the "vest carrier"), which is then worn over the shirt. The body armor also can be worn under an officer's shirt. The duty belt is worn around the waist and weighs about 25 pounds when worn with all

required equipment, generally including an officer's gun, ammunition, Taser, pepper spray, handcuffs, baton, and radio. With permission from the Police Chief, a patrol officer may carry some of these required items in pockets on his or her vest carrier instead of carrying them on the duty belt.

14. Officer Panattoni is one of only three female officers employed by FPD, and is the only woman who works full-time patrol shifts. All of FPD's supervising officers are male, including the Police Chief, the two Deputy Chiefs, and the four Sergeants.

15. In early 2014, Officer Panattoni began undergoing fertility treatments in order to become pregnant. During this period, she sought and was denied reasonable accommodations for her medical treatment.

16. In August 2014, believing she was experiencing pregnancy and disability discrimination, Officer Panattoni filed a charge of discrimination with the EEOC. She ultimately decided, however, not to pursue legal action at that time.

**Defendant's Policies and Practices Regarding Job Modification and Pregnant Officers**

17. At all relevant times, FPD maintained a Temporary Modified-Duty Assignments Policy (the "Modified-Duty Policy") allowing employees to request a temporary modified-duty assignment to accommodate "short-term injuries or illnesses." (January 19, 2015 Modified-Duty Policy, Ex. 2, § 1054.4.; November 16, 2015 Modified-Duty Policy, Ex. 3, § 1054.4).

18. Defendant's practice is to grant temporary modified-duty assignments to non-pregnant officers who have experienced an on-the-job injury requiring accommodation.

19. On information and belief, Defendant does not limit its assignments of temporary modified-duty and non-patrol tasks to police officers injured on the job, and has also assigned such tasks to non-pregnant officers simply in order to accommodate their personal preferences.

4

20. At all relevant times, FPD's Modified-Duty Policy included a pregnancy notice provision that required "[p]regnant employees [to] notify their immediate supervisors as soon as practicable and provide a statement from their medical providers identifying any pregnancy-related job restrictions or limitations." (Ex. 2, § 1054.7.1; Ex. 3, § 1054.7.1.).

21. However, contrary to Illinois law, FPD's policy manual prior to November 2015 failed to notify employees of their rights to seek and be granted an array of possible reasonable accommodations for pregnancy, childbirth, and related conditions, other than light duty or leave. And in November 2015, after Officer Panattoni informed Defendant that she would be undergoing an IVF embryo transfer procedure that she hoped would lead to pregnancy, FPD amended its (already deficient) Modified-Duty Policy to delete any reference to Illinois' pregnancy accommodations statute, 775 ILCS 5/2-102, or to FPD's obligation to provide pregnant employees with modified-duty assignments upon request if such requests could be reasonably accommodated. (Ex. 3, § 1054.7.)

22. On information and belief, Defendant never has granted a temporary modified-duty or non-patrol assignment to an officer as an accommodation for pregnancy.

**Defendant's Refusal to Consider Reasonable Accommodations for Officer Panattoni's Pregnancy**

23. Pursuant to FPD's policy, on or about January 8, 2016, Officer Panattoni informed Police Chief John Burica ("Chief Burica") that she was pregnant. She informed him that her doctor had not imposed any restrictions on her ability to continue her patrol duties, and provided a doctor's note to that effect. She also told him that she anticipated that, as her pregnancy progressed, she would likely require accommodations, such as modification of her job duties, to continue working, and attempted to initiate a dialogue about such accommodations.

5

24. Chief Burica refused to discuss accommodations. He told Officer Panattoni that modified-duty assignments were only available to officers injured on the job. He explained that he did not want to "set a precedent" by extending "light duty" to a pregnant officer, and that he only had to treat Officer Panattoni like "someone with a broken leg" whose injury occurred during off-duty hours. He told Officer Panattoni that if she could not perform her job duties without any changes, she would have to go on leave.

**Defendant's Denial of Reasonable Accommodations During Officer Panattoni's Pregnancy**

25. Over the next two months, Officer Panattoni and her union representative, Roy Carlson ("Carlson"), attempted to negotiate with Defendant for a temporary modification of Officer Panattoni's duties during her pregnancy. Defendant rejected their proposals. Chief Burica consistently maintained that, because Officer Panattoni was pregnant, FPD had no obligation to allow her to perform available modified-duty or non-patrol tasks as it would for an officer who was injured on the job.

26. During this period, Officer Panattoni identified for Chief Burica numerous available non-patrol tasks that she could perform within FPD, such as recordkeeping, recording "walk-in" complaints from members of the public, conducting witness interviews, assisting in follow-up investigations, performing clerical tasks, and assisting in crime prevention outreach. Defendant rejected these proposals and consistently rebuffed Officer Panattoni's efforts to discuss the availability of such tasks.

27. Officer Panattoni and Carlson further proposed that Defendant could accommodate Officer Panattoni's request for modified duty with a temporary assignment outside the FPD, such as performing administrative work at the Village Hall. Defendant rejected that request as well, claiming it posed an unspecified conflict with FPD's policies on light duty.

6

**Defendant's Additional Failures to Accommodate Officer Panattoni's Pregnancy**

28. In addition to refusing to engage in a good faith, interactive process concerning whether temporary job modifications might be available to Officer Panattoni, Defendant further refused to provide Officer Panattoni with the clothing and gear needed to continue performing her patrol duties safely as her pregnancy progressed.

29. Defendant repeatedly refused Officer Panattoni's requests for a maternity uniform that would accommodate her changing body, and ultimately only provided her with two ill-fitting men's shirts and one pair of non-maternity pants. Officer Panattoni was charged with finding her own suspenders to keep the pants from falling down.

30. On information and belief, Defendant did not refuse or delay in processing similar requests for uniforms when made by non-pregnant officers.

31. Defendant also refused Officer Panattoni's requests for extenders to enable her to comfortably wear her body armor. Without extenders to fit her body armor and vest carrier over her shirt or adequately-sized shirts to fit her body armor underneath, Officer Panattoni was forced to continue wearing body armor that exerted continual pressure on her abdomen, made it difficult for her to breathe, and led to the vest carrier regularly popping open with any exertion or sudden movement.

32. On information and belief, Defendant did not refuse similar requests for body armor or equipment when made by non-pregnant officers.

33. Defendant also denied Officer Panattoni's requests for permission to carry her equipment, such as pepper spray, radio, and Taser, in pockets on her vest carrier in order to relieve the painful pressure that her 25-pound duty belt exerted on her growing abdomen.

34. On information and belief, Defendant has granted non-pregnant officers permission to remove equipment from their duty belts and to store such equipment in pockets on their vest carriers.

35. Additionally, after Officer Panattoni disclosed her pregnancy to Chief Burica, Defendant withdrew permission to make up time outside of her regular shift to attend pregnancy-related doctor's appointments, and instead required her to use accrued sick leave or other benefit time.

36. On information and belief, Defendant regularly permitted non-pregnant officers – including Officer Panattoni herself, prior to her pregnancy – to take personal breaks from duty of up to 60 minutes without having to use accrued sick leave or other benefit time.

**Defendant's Forcing Officer Panattoni to Take an Involuntary Leave of Absence**

37. On or about March 17, 2016, when Officer Panattoni was approximately 5 months pregnant, she gave Chief Burica a new doctor's note. The note stated that she should not continue to wear her 25-pound duty belt and recommended that she avoid physical altercations. The note also recommended that Officer Panattoni "perform light duty/clerical work" until the end of her pregnancy.

38. Chief Burica told Officer Panattoni that the doctor's note meant she no longer could work as a patrol officer, and that, because she had not been injured on the job, Defendant immediately would place her on leave.

39. Fearing that taking leave so early would result in her running out of accrued paid benefit time – and possibly losing her job – before giving birth, Officer Panattoni told Chief Burica that she remained willing and able to continue working patrol, including wearing her duty

8

belt. Chief Burica refused, stating that he could not allow Officer Panattoni to continue working "now that a doctor had placed restrictions on [her]," or words to that effect.

40. Within approximately a month of being placed on involuntary leave, Officer Panattoni exhausted her accrued paid benefit time and was removed from Defendant's payroll.

41. In order to avoid loss of all income during the remainder of her pregnancy and recovery from childbirth, Officer Panattoni applied to Defendant's Police Pension Board to draw disability pension benefits.

42. Based on Defendant's refusal to allow Officer Panattoni to continue working in a modified capacity while she was pregnant, Defendant's Police Pension Board authorized her receipt of disability pension benefits, which amounted to only half of her base salary.

43. During Officer Panattoni's involuntary leave, Defendant did not allow her to attend accident reconstruction training classes for which she previously had been approved and which would have made her eligible for enhanced pay, even though the duties required for such training were consistent with her doctor's recommendations and she was willing and able to attend the training while pregnant.

44. During her roughly 7-month leave, Officer Panattoni also lost creditable service time for her police pension and was unable to accrue any benefit time.

45. Officer Panattoni gave birth on August 6, 2016 and returned to work on October 17, 2016.

46. During Officer Panattoni's involuntary leave, FPD reassigned a part-time patrol officer, Officer Teri O'Donnell ("Officer O'Donnell"), to a "hybrid" role performing many non-patrol duties of the kind that Officer Panattoni previously had proposed as an accommodation during her pregnancy. These duties included maintaining records, attending community events,

9

assisting with detective work, and assisting with crime prevention. On information and belief, Officer O'Donnell was not pregnant and Defendant assigned her these non-patrol duties to accommodate her personal preference to perform such tasks instead of patrol duties.

**Defendant's Discriminatory Refusal to Hire Officer Panattoni for Other FPD Positions and Retaliation**

47. Before Defendant forced her onto leave, Officer Panattoni had applied within FPD for a vacant Drug Abuse Resistance Education (DARE) officer position. Although Officer Panattoni was qualified for the position, and Defendant told her that she had interviewed well, in June 2016, while Officer Panattoni was on involuntary leave, Defendant selected a male officer with less seniority for the DARE officer job.

48. Since Officer Panattoni's return to work in October 2016, Defendant has subjected her to a pattern of disparate treatment, including but not limited to singling her out for unwarranted scrutiny and threatened discipline, depriving her of uniforms and equipment needed to do her job effectively, and denying her requested training opportunities. Defendant also made improper inquiries into whether Officer Panattoni was again undergoing fertility treatments.

49. In addition, in April 2017, Defendant denied Officer Panattoni's husband, Sergeant Joel Panattoni, a promotion to Deputy Chief, in favor of a less senior candidate.

50. In August 2017, after Officer Panattoni informed Defendant she was undergoing fertility treatments in order to have a second child, Defendant denied Officer Panattoni a promotion to Detective, instead selecting a male officer with less seniority. Defendant also threatened Officer Panattoni with removal from duty as an evidence technician, a role that comes with a stipend, after she requested assistance to avoid excessive exposure to fingerprint dust, a substance contraindicated for women seeking to become pregnant.

**FIRST CAUSE OF ACTION**
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**
**Disparate Treatment Because of Sex (Pregnancy)**

51. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

52. Defendant discriminated against Officer Panattoni based on her sex, and because of her pregnancy, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act, by refusing to accommodate her pregnancy and/or pregnancy-related conditions while accommodating other, non-pregnant workers who were similar in their ability or inability to work, and instead forcing her onto leave.

53. Defendant's purported reasons for refusing to accommodate Officer Panattoni are a pretext for sex discrimination.

54. Defendant's refusal to accommodate Officer Panattoni imposed a significant burden on her, and Defendant's purported reasons for its refusal are not sufficiently strong to justify that burden.

55. Defendant discriminated against Officer Panattoni based on her sex, and because of her pregnancy, by denying her the DARE officer position in favor of a less senior male applicant who was not pregnant. Defendant's purported reasons for this decision are a pretext for sex discrimination.

56. As a result of Defendant's unlawful sex discrimination, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

57. As a result of Defendant's unlawful sex discrimination, Officer Panattoni suffered emotional pain, suffering, and other nonpecuniary losses.

11

## SECOND CAUSE OF ACTION
**Title VII, 42 U.S.C. §§ 2000e-2(a), 2000e(k)**
**Disparate Impact Because of Sex (Pregnancy)**

58. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

59. Defendant discriminated against Officer Panattoni based on her sex and pregnancy because its policy of limiting modified-duty assignments to workers injured on the job has a disparate impact on pregnant officers, in violation of Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

60. Defendant's policy guarantees that any officer who becomes pregnant and requires job modifications to continue working will be forced to go on leave.

61. Defendant's policy of limiting modified-duty assignments to officers injured on the job cannot be justified by business necessity.

62. As a result of Defendant's unlawful sex discrimination, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

## THIRD CAUSE OF ACTION
**Title VII, 42 U.S.C. §§ 2000e-3(a), 2000e(k)**
**Retaliation**

63. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

64. Defendant retaliated against Officer Panattoni, in violation of Title VII of the Civil Rights Act of 1964, because she engaged in protected activity, including but not limited to filing charges of discrimination with the EEOC and IDHR.

65. Defendant's adverse actions would be likely to dissuade a reasonable employee from making or supporting a charge of discrimination.

66. As a result of Defendant's unlawful retaliation, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

67. As a result of Defendant's unlawful retaliation, Officer Panattoni suffered emotional pain, suffering, and other nonpecuniary losses.

## FOURTH CAUSE OF ACTION
## IHRA, 775 ILCS 5/2-102
### Failure to Provide Reasonable Accommodations for Pregnancy

68. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

69. Defendant failed to make reasonable accommodations for Officer Panattoni's pregnancy, childbirth, or medical or common conditions related to pregnancy or childbirth, in violation of the IHRA, 775 ILCS 5/2-102(J), including but not limited to requiring her to take leave even though another reasonable accommodation could have been provided.

70. Defendant denied Officer Panattoni reasonable accommodations even though Defendant granted similar accommodations to non-pregnant employees and it would not have imposed undue hardship on Defendant to grant such accommodations to Officer Panattoni.

71. As a result of Defendant's unlawful conduct, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

72. As a result of Defendant's unlawful conduct, Officer Panattoni suffered emotional pain, suffering, and other nonpecuniary losses.

## FIFTH CAUSE OF ACTION
## IHRA, 775 ILCS 5/2-102
### Disparate Treatment Because of Pregnancy

73. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

74. Defendant discriminated against Officer Panattoni based on her pregnancy, childbirth, or medical or common condition related to pregnancy or childbirth, in violation of the IHRA, which provides that pregnant workers "shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work, regardless of the source of the inability to work", 775 ILCS 5/2-102(I).

75. As a result of Defendant's unlawful pregnancy discrimination, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

76. As a result of Defendant's unlawful pregnancy discrimination, Officer Panattoni suffered emotional pain, suffering, and other nonpecuniary losses.

## SIXTH CAUSE OF ACTION
### IHRA, 775 ILCS 5/2-102
### Disparate Impact Because of Pregnancy

77. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

78. Defendant discriminated against Officer Panattoni based on her pregnancy, childbirth, or medical or common condition related to pregnancy or childbirth, in violation of the IHRA, 775 ILCS 5/2-102, because its policy of limiting modified-duty assignments for workers injured on the job has a disparate impact on pregnant officers.

79. Defendant's policy guarantees that any officer who becomes pregnant and requires job modifications to continue working will be forced to go on leave.

80. Defendant's policy of limiting modified-duty assignments to officers injured on the job cannot be justified by business necessity.

81. As a result of Defendant's unlawful pregnancy discrimination, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

### SEVENTH CAUSE OF ACTION
### IHRA, 775 ILCS 5/6-101(A)
### Retaliation

82. Officer Panattoni realleges and incorporates by reference, as if fully set forth herein, each and every allegation of this Complaint.

83. Defendant retaliated against Officer Panattoni, in violation of the IHRA, 775 ILCS 5/6-101(A), because she engaged in protected activity, including but not limited to filing charges of discrimination with the EEOC and IDHR.

84. As a result of Defendant's unlawful retaliation, Officer Panattoni suffered significant monetary loss, including loss of earnings and other benefits.

85. As a result of Defendant's unlawful retaliation, Officer Panattoni suffered emotional pain, suffering, and other nonpecuniary losses.

### PRAYER FOR RELIEF

For the foregoing reasons, Officer Panattoni respectfully requests that the Court grant the following relief:

A. Declaratory relief, including but not limited to a declaration that Defendant violated Title VII and the IHRA;

B. Injunctive relief, including but not limited to revision of Defendant's policies with respect to accommodating pregnancy, childbirth, and related conditions, so that they comply with Title VII and the IHRA;

C. Compensation for loss of income and benefits;

D. Compensatory damages, including for emotional distress;

E. Pre-judgment and post-judgment interest at the highest lawful rate;

F. Costs incurred, including reasonable attorneys' fees to the extent allowable by law; and

G. Such other relief as the Court deems just and proper.

## JURY DEMAND

Officer Panattoni demands a jury trial on the matters alleged herein.

Dated: September 18, 2017

Respectfully submitted,

/s/ Lorie A. Chaiten
*Counsel for the plaintiff*

Lorie A. Chaiten
Amy P. Meek
Roger Baldwin Foundation of ACLU, Inc.
150 N Michigan Ave Ste 600
Chicago, IL 60601
(312) 201-9740
lchaiten@aclu-il.org
ameek@aclu-il.org

Lenora M. Lapidus*
Gillian L. Thomas*
American Civil Liberties Union
Women's Rights Project
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2668
llapidus@aclu.org
gthomas@aclu.org

*pro hac vice* admission motion to be filed